UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

KRISTINA DANIELLE EHRHART

CIVIL ACTION

VERSUS

NUMBER 13-360-BAJ-SCR

CAROLYN W. COLVIN, ACTING
COMMISSIONER OF SOCIAL SECURITY

**NOTICE**

    Please take notice that the attached Magistrate Judge's Report has been filed with the Clerk of the U. S. District Court.

    In accordance with 28 U.S.C. §636(b)(1), you have 14 days after being served with the attached report to file written objections to the proposed findings of fact, conclusions of law, and recommendations set forth therein. Failure to file written objections to the proposed findings, conclusions and recommendations within 14 days after being served will bar you, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the District Court.

    ABSOLUTELY NO EXTENSION OF TIME SHALL BE GRANTED TO FILE WRITTEN OBJECTIONS TO THE MAGISTRATE JUDGE'S REPORT.

    Baton Rouge, Louisiana, January 30, 2015.

                              STEPHEN C. RIEDLINGER
                              UNITED STATES MAGISTRATE JUDGE

UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

KRISTINA DANIELLE EHRHART

VERSUS

CAROLYN W. COLVIN, ACTING
COMMISSIONER OF SOCIAL SECURITY

CIVIL ACTION

NUMBER 13-360-BAJ-SCR

**MAGISTRATE JUDGE'S REPORT**

Plaintiff Kristina Danielle Ehrhart brought this action under 42 U.S.C. § 405(g) for judicial review of the final decision of Carolyn W. Colvin, Acting Commissioner of Social Security ("Commissioner") denying her applications for disability insurance and supplemental security income benefits ("SSI").

Based on the applicable standard of review under § 405(g) and the analysis which follows, the Commissioner's decision should be affirmed.

**Standard of Review**

Under § 405(g), judicial review of a final decision of the Commissioner denying disability and SSI benefits is limited to two inquiries: (1) whether substantial evidence exists in the record as a whole to support the Commissioner's findings, and (2) whether the Commissioner's final decision applies the proper legal standards. *Myers v. Apfel*, 238 F.3d 617, 619 (5th Cir. 2001); *Perez v. Barnhart*, 415 F.3d 457, 461 (5th Cir. 2005). If substantial evidence supports the Commissioner's findings, they are conclusive

and must be affirmed. *Richardson v. Perales*, 402 U.S. 389, 91 S.Ct. 1420, 1422 (1971); *Martinez v. Chater*, 64 F.3d 172, 173 (5th Cir. 1995). Substantial evidence is that which is relevant and sufficient for a reasonable mind to accept as adequate to support a conclusion. It is more than a mere scintilla and less than a preponderance. *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994); *Carey v. Apfel*, 230 F.3d 131, 135 (5th Cir. 2000). A finding of no substantial evidence is appropriate only if no credible evidentiary choices or medical findings support the decision. *Boyd v. Apfel*, 239 F.3d 698, 704 (5th Cir. 2001). In applying the substantial evidence standard the court must review the entire record as whole, but may not reweigh the evidence, try the issues de novo, or substitute its judgment for that of the Commissioner, even if the evidence weighs against the Commissioner's decision. *Newton v. Apfel*, 209 F.3d 448, 452 (5th Cir. 2000). Conflicts in the evidence are for the Commissioner and not the court to resolve. *Masterson v. Barnhart*, 309 F.3d 267, 272 (5th Cir. 2002).

If the Commissioner fails to apply the correct legal standards, or provide a reviewing court with a sufficient basis to determine that the correct legal principles were followed, it is grounds for reversal. *Bradley v. Bowen*, 809 F.2d 1054, 1057 (5th Cir. 1981); *Western v. Harris*, 633 F.2d 1204, 1206 (5th Cir. 1981); *Wiggins v. Schweiker*, 679 F.2d 1387, 1389 (11th Cir. 1982). Thus,

on judicial review the Commissioner's decision is granted great deference, and the decision will not be disturbed unless the court cannot find substantial evidence in the record to support it, or the court finds an error of law was made. *Leggett v. Chater,* 67 f.3d 558, 564 (5th Cir. 1995).

A claimant has the burden of proving that he or she suffers from a disability, which is defined as a medically determinable physical or mental impairment lasting at least 12 months that prevents the claimant from engaging in substantial gainful activity. 20 C.F.R. §§ 404.1505; 416.905. The regulations require the ALJ to apply a five step sequential evaluation to each claim for benefits. 20 C.F.R. §§ 404.1520; 416.920. In the five step sequence used to evaluate claims the Commissioner must determine whether: (1) the claimant is currently engaged in substantial gainful activity; (2) the claimant has a severe impairment(s); (3) the impairment(s) meets or equals the severity of a listed impairment in Appendix 1 of the regulations;[1] (4) the impairment(s) prevents the claimant from performing past relevant work; and, (5)

---

[1] Listed impairments are descriptions of various physical and mental illnesses and abnormalities generally characterized by the body system they affect. Each impairment is defined in terms of several specific medical signs, symptoms, or laboratory test results. For a claimant to show that his impairment matches a listed impairment he must demonstrate that it meets all of the medical criteria specified in the listing. An impairment that exhibits only some of the criteria, no matter how severely, does not qualify. *Sullivan v. Zebley*, 493 U.S. 521, 529-32, 110 S.Ct. 885, 891-92 (1990); 20 C.F.R. §§ 404.1525; 416.925.

3

the impairment(s) prevents the claimant from doing any other work. *Masterson*, 309 F.3d at 271.

The burden of proving disability rests on the claimant through the first four steps. At the fourth step the Commissioner analyzes whether the claimant can do any of his past relevant work. If the claimant shows at step four that he is no longer capable of performing past relevant work, the burden shifts to the Commissioner to show that the claimant is able to engage in some type of alternative work that exists in the national economy. *Myers*, supra. If the Commissioner meets this burden the claimant must then show that he cannot in fact perform that work. *Boyd*, 239 F.3d at 705.

**Background and Claims of Error**

Plaintiff was 27 years of age at the time of the administrative law judge's ("ALJ") decision.[2] Plaintiff graduated from high school, and attended college for approximately a year to study accounting.[3] Plaintiff's past relevant work consisted of employment as a child care worker, cashier/manager, grocery stocker, bank utility clerk, customer service representative, and telecommunications auditor. In her applications for disability and

---

[2] Plaintiff's age placed her in the category of a "younger person." 20 C.F.R. § 404.1563(c); § 404.1563(c).

[3] Plaintiff reported she left college after she became pregnant. AR p. 310.

4

supplemental security income benefits, the plaintiff alleged that she became disabled and no longer able to engage in substantial gainful activity as of October 2008 because of bipolar disorder and panic attacks. AR pp. 28-32, 210-39, 242, 513-20.

After her application was denied at the initial stages, the plaintiff requested an ALJ hearing, after which the ALJ issued an initial unfavorable decision. However, the Appeals Council granted review of this decision and remanded the case to the ALJ. AR pp. 25-53, 64-79. Following the remand another ALJ hearing was held and the ALJ issued a second unfavorable decision. AR pp. 11-19, 510-42. The record reflected the plaintiff had worked after her alleged disability onset of October 2, 2008. However, the ALJ determined that under the regulations the employment did not qualify as substantial gainful activity. AR pp. 13-14. At the second step the ALJ found the plaintiff had severe impairments of bipolar disorder, not otherwise specified, and panic disorder, without agoraphobia. The ALJ concluded at step three the plaintiff's combination of severe mental impairments did not meet or medically equal the severity any listed impairment found under Listing 12.00 which covers mental disorders.[4] AR pp. 14-16.

The ALJ then evaluated the plaintiff's residual functional capacity ("RFC") to determine whether, despite her severe

---

[4] In her appeal the plaintiff did not assert any ALJ error at the third step.

5

impairments, the plaintiff was able to do any of her past relevant work or other work in the national economy.[5] The ALJ found that the plaintiff had the ability to perform the full range of work at all exertional levels, however, the plaintiff mental impairments resulted in the following nonexertional limitations - the inability to perform complex tasks or instructions, or have more than limited interaction with the public. AR p. 16. Given this RFC, and based on the testimony of vocational expert Thomas Mungall, the ALJ concluded that the plaintiff was unable to engage in any of her past relevant work. However, given her age, education, work experience and RFC, the ALJ relied on the vocational testimony and found that the plaintiff would be able to make a successful adjustment to other work as a dishwasher/kitchen helper and housekeeping cleaner, and these jobs exist in significant numbers in the national economy. AR pp. 535-38. Therefore, the ALJ determined at the fifth step that the plaintiff is not disabled.[6]

---

[5] Residual functional capacity is a measure of a claimant's capacity to do physical and mental work activities on a regular and sustained basis. It is the foundation of the findings at steps four and five. 20 C.F.R. §§ 404.1545; 416.945.

[6] Work exists in the national economy when it exists in significant numbers either in the region where the claimant lives or in several other regions of the country; when there is a significant number of jobs, in one or more occupations, having requirements which the claimant is able to meet with his physical or mental abilities and qualifications. It does not matter whether work exists in the immediate area in which the claimant lives, a specific job vacancy exists for the claimant, or the claimant would be hired if he applied for work. However, isolated jobs that exist
(continued...)

AR pp. 18-19.

In her appeal memorandum the plaintiff argued the following errors by the ALJ require reversal and remand under sentence four of § 405(g): (1) the ALJ improperly rejected the opinion of the plaintiff's treating doctor, Dr. Elizabeth Taylor, without good cause; (2) the ALJ improperly assessed the plaintiff's credibility; (3) the ALJ improperly failed to include a moderate limitation in the plaintiff's ability to maintain concentration, persistence and pace and no evidentiary choices support the ALJ's RFC finding; and, (4) because of the ALJ's erroneous determination of the plaintiff's RFC the vocational testimony fails to carry the Commissioner's burden of proof at the fifth step.

## Analysis

**The ALJ applied the proper legal standards in determining the plaintiff's RFC and the finding was supported by substantial evidence.**

Plaintiff argued that the RFC analysis contained reversible error because the ALJ improperly assessed her credibility, rejected the opinions of her treating physician without good cause, and failed to include a limitation on concentration, persistence and pace. According to the plaintiff, the ALJ impermissibly relied on

---

⁶(...continued)
only in very limited numbers in relatively few locations outside of the region where the claimant lives are not considered work which exists in the national economy. 20 C.F.R. §§ 404.1566(a); 416.966(a).

7

his own medical opinion to determine the RFC, and no evidentiary choices support his RFC finding.

The record as a whole shows that these alleged errors are not supported by the record or the applicable law, and the RFC finding is corroborated by substantial evidence. Review of the administrative record establishes that the ALJ did not rely on his own medical opinions to determine the plaintiff's RFC. Rather, the record demonstrates that there is substantial evidence to sustain the ALJ's finding. That evidence consists of medical opinions, information contained in the mental health treatment records, the records of the plaintiff's part-time employment since her alleged date of onset,[7] her daily activities, and college attendance/grades.[8]

For example, Donnell C. Ashford, Ph.D. conducted mental tests and a mental examination of the plaintiff in March 2009. AR pp. 380-85. Ashford assigned the plaintiff a Global Assessment of Functioning ("GAF") of 60, which indicates only moderate symptoms.[9]

---

[7] Evidence of part-time work that does not satisfy the definition of substantial gainful activity is relevant in assessing the plaintiff's credibility, RFC and ability to work. *See, Murray v. Astrue*, 419 Fed.Appx. 539 (5th Cir. 2011).

[8] See, AR pp. 28-31, 33-35, 175-208, 237-38, 241, 309-10, 324, 371-74, 383, 406, 413-18, 433-36, 439, 444, 470, 484-85, 489-99, 501-02, 505, 514-20, 524-29.

[9] The GAF is a standard measurement scale used to rate an adult individual's overall functioning with respect to social, occupational, and physiological functioning. A score of 60
(continued...)

He stated the plaintiff seemed able to maintain attention to perform at least simple repetitive tasks for two hour blocks of time and able to respond appropriately to supervisors and interact appropriately with co-workers.[10] Joseph Tramontana, the state agency psychological consultant, concluded that the plaintiff should be able to "complete routine, repetitive tasks, interact with coworkers, accept supervision, and maintain the concentration, persistence, and pace consistent with the requirements of unskilled labor." AR p. 392.[11] This evidence, along with the other evidence cited, is relevant and sufficient for a reasonable mind to accept

---

[9](...continued)
indicates moderate symptoms, but is on the verge of some mild symptoms. *Boyd v. Apfel,* 239 F.3d 698, 700 n. 2 (5th Cir. 2001); *Henderson v.* Colvin, 520 Fed.Appx. 268 (5th Cir. 2013); Vaughn *v. Colvin,* 2014 WL 5303003 (5th Cir. Oct. 17, 2014); .

[10] The ALJ specifically addressed and discounted Ashford's statements that the plaintiff's ability to sustain effort and persist at a normal pace over the course of a 40 hour work week, and tolerate the stress associated with day to day work activities was marginal due to multiple mental health problems. AR p. 385. The ALJ concluded that for these statements Ashford relied too heavily on the plaintiff's subjective assertions, and the chance that the plaintiff might have to stop taking her medication. The ALJ noted that the totality of the evidence and the plaintiff's ability to work part-time, showed she was capable of performing work activity. This is a demonstration of the role of the ALJ. As the finder of fact it is the ALJ's function to consider and weigh all the evidence, resolve conflicts in the evidence and draw reasonable inferences from the evidence. *See*, *Greenspan v. Shalala*, 38 F.3d 232, 239-40 (5th Cir. 1994); *Hall v. Barnhart*, 31 Fed.Appx. 839 (5th Cir. 2002); *Short v. Astrue*, 2013 WL 655020 (N.D. Tex. Feb. 5, 2013).

[11] The ALJ noted in his decision that he gave little weight to only two aspects of Tramontana's assessment. AR p. 18.

as adequate support for the conclusion reached by the ALJ:

> After careful consideration of the entire record, the claimant has the residual functional capacity to perform a full range of work at all exertional levels but with the following nonexertional limitations: because of emotional problems, she is unable to perform complex tasks or instructions and should have no more than limited interaction with the public, as she prefers to work with things rather than people.

AR p. 16.

The record also does not support the arguments that in his analysis the ALJ improperly evaluated the plaintiff's credibility or Dr. Taylor's statements in a letter to the plaintiff's representative on March 1, 2010. AR p. 450.

Under the regulations and applicable legal standards, the ALJ must consider a claimant's subjective complaints, but may find that those complaints are not credible or are exaggerated in light of the evidence. The ALJ is not required to give subjective evidence precedence over objective evidence. 20 C.F.R. §§ 404.1529 and 416.929; 20 C.F.R. §§ 404.1527 and 416.927; Social Security Ruling 96-7p;[12] *Anthony v. Sullivan,* 954 F.2d 289, 295-96 (5th Cir. 1992); *Chambliss v. Massanari*, 269 F.3d 520, 522 (5th Cir. 2001); *Villa v. Sullivan*, 895 F.2d 1019, 1024 (5th Cir. 1990).

With regard to his assessment of the credibility of plaintiff's statements about her symptoms, the ALJ cited and

---

[12] TITLES II AND XVI: EVALUATION OF SYMPTOMS IN DISABILITY CLAIMS: ASSESSING THE CREDIBILITY OF AN INDIVIDUAL'S STATEMENTS, SSR 96-7p, 1996 WL 374186 (S.S.A. July 2, 1996).

properly applied the applicable law and regulations. AR pp. 16-18. The ALJ did not simply make a conclusory finding on credibility and fail to support it with adequate reasons. He explained in sufficient detail that this conclusion was based on relevant opinion evidence, statements in the plaintiff's treatment records, the stabilizing effects of her medication, and the plaintiff's ability to care for herself and her children and work part-time. An ALJ is not required to do a point-by-point discussion, mechanically follow every guiding regulatory factor, or refer to every bit of evidence in the record that supports his credibility analysis and findings.[13] Review of the decision as a whole supports the conclusion that the ALJ not only cited the proper legal standards, but also correctly applied them in making his determination that the plaintiff was not fully credible. The same evidence cited with regard to the ALJ's RFC finding demonstrates that the ALJ's credibility assessment is supported by substantial evidence.[14]

The ALJ also did no err in his treatment of Dr. Taylor's statements contained in a letter dated March 1, 2010. AR p. 450. To the extent Dr. Taylor stated the plaintiff was unable to work or attempt to return to work, it was not error for the ALJ to

---

[13] *See*, *Giles v. Astrue*, 433 Fed.Appx. 241 (5th Cir. 2011).

[14] See, pages of the administrative record cited in footnote 7.

11

discredit or fail to give any special consideration to this statement. Statements of this type by a treating physician are not a medical opinion, but a legal conclusion on an issue reserved to the Commissioner. 20 C.F.R. § 404.1527(d); *Frank v. Barnhart*, 326 F.3d 618, 620 (5th Cir. 2003). In addition, the plaintiff's argument that the ALJ failed to consider, as required by *Newton,* all the regulatory factors before rejecting Dr. Taylor's opinions is without merit. This requirement does not apply if there is competing first-hand medical evidence and the ALJ finds that one doctor's opinion is more well-founded than another doctor's opinion. *Walker v. Barnhart*, 158 Fed.Appx. 534 (5th Cir. 2005).

In this case the record reflects there was competing first-hand medical evidence. Moreover, it is well established that an ALJ is free to reject the medical opinion of any physician when the evidence supports a contrary conclusion. *Bradley v. Bowen*, *supra*. A treating physician's opinions are not conclusive and may be assigned little or no weight by the ALJ when good cause is shown. Good cause exists when the opinion is conclusory, unsupported by medically acceptable clinical, laboratory or diagnostic techniques, or is otherwise unsupported by the evidence. *Newton,* 209 F.3d at 455-56. The ALJ had good cause not to credit Dr. Taylor's statements about the plaintiff's mental condition. The conclusory statements were not supported by record evidence of the plaintiff's work activity, level of daily activities, and mental health

treatment records.[15]  In summary, the ALJ's decision not to give Dr. Taylor's March 1, 2010 letter special consideration or weight, complied with the regulations and was supported by substantial evidence.

Finally, the plaintiff claimed the RFC finding was in error because in his decision the ALJ determined the plaintiff's ability to maintain concentration, persistence and pace is moderately limited, but failed to include this specific restriction in the RFC.  This claim of error is not supported by the regulations or the record.  As pointed out by the Commissioner and acknowledged by the plaintiff, this limitation was a finding made in analyzing whether the plaintiff's mental impairments met the requirements of Listings 12.03, 12.04 and 12.06.  AR pp. 14-16, 404.  The ALJ was required to consider this restriction in his analysis and determination of the plaintiff's mental residual functional capacity, but was not required to include it in the RFC finding. It is apparent from the ALJ's decision that he did take this limitation into account in the RFC finding by concluding the

---

[15] *Id.* Dr. Taylor stated in her 2010 letter that the plaintiff had at least two suicide attempts.  Plaintiff reported that these attempts were in 2005 and 2006.  There is no evidence of any suicide attempts between 2006 and the date of Dr. Taylor's letter. In addition, at the hearing in November 2011 the plaintiff testified to thoughts while driving of crashing into the side of a bridge, into a light pole, or other object.  AR pp. 533-34. However, the treatment records contain only two instances where the plaintiff reported these thoughts - noted in records on October 29, 2008 and March 2, 2010.  AR pp. 372, 444.

13

plaintiff was "unable to perform complex tasks or instructions and should have no more than limited interaction with the public." AR pp. 14-16, 389-406. Again, this finding is consistent with: (1) Ashford's opinion that the plaintiff is able to understand, remember and carry out most instructions, and able to maintain attention to perform at least simple, repetitive tasks for two hour blocks of time; and, (1) Tramontana's assessment that the plaintiff should be able to complete routing, repetitive tasks, interact with co-workers, accept supervision, and maintain the concentration, persistence, and pace consistent with the requirements of unskilled labor. AR pp. 385,392.

The analysis above demonstrates the ALJ applied the proper legal standards to determine the plaintiff's RFC and his finding was supported by substantial evidence.

**The ALJ's finding at the fifth step was free of error and supported by substantial evidence.**

Plaintiff's claim of error at step five essentially rested on her argument that the ALJ's RFC finding was defective and lacked any supporting evidence. The analysis above demonstrates these arguments are without merit, and consequently there is no basis to find that the vocational evidence relied on by the ALJ did not meet the Commissioner's burden of proof at the fifth step.

It is well established that if a claimant has nonexertional limitations the ALJ uses the Medical-Vocational Guidelines only as

14

a framework, and is required to obtain vocational expert testimony to support his findings at step five of the disability analysis. *Bowling v. Shalala*, 36 F.3d 431, 435 (5th Cir. 1994); *Fields v. Bowen*, 805 F.2d 1168, 1170 (5th Cir. 1986); *Vaughn v. Shalala*, 58 F.3d 129, 132 (5th Cir. 1995). In this case the plaintiff had only non-exertional limitations. Therefore, after determining the plaintiff's RFC and that the plaintiff was unable to do any of her past relevant work, the ALJ was required to secure vocational expert evidence to support the disability determination at the fifth and final step of the analysis. The ALJ correctly obtained this vocational testimony from Mungall at the hearing. In response to the questions presented at the hearing, which fairly incorporated all of the plaintiff's limitations recognized by the ALJ, Mungall stated that given the plaintiff's age, education, work experience and RFC, there were jobs existing in significant numbers in the national economy that the plaintiff would be able to perform - dishwasher/kitchen helper and housekeeping cleaner. This vocational evidence constitutes substantial evidence to support the ALJ's finding at the fifth step that the plaintiff is not disabled within the meaning of the Social Security Act.

## Conclusion

The record considered as a whole shows that the ALJ applied the proper legal standards and substantial evidence supports his determination at the fifth step that the plaintiff is not disabled.

**RECOMMENDATION**

It is the recommendation of the magistrate judge that under sentence four of 42 U.S.C. § 405(g), the final decision of the Acting Commissioner of Social Security, Carolyn W. Colvin, denying the applications for disability and supplemental security income benefits filed by plaintiff Kristina Danielle Ehrhart be affirmed, and this action be dismissed.

Baton Rouge, Louisiana, January 30, 2015.

*[signature: Stephen C. Riedlinger]*
STEPHEN C. RIEDLINGER
UNITED STATES MAGISTRATE JUDGE